EMPIRE CIRCUIT CO. et al. v. CHANNON.

(Circuit Court of Appeals, Seventh Circuit. January 19, 1909.)

No. 1,498.

1. PATENTS (§ 167*)—CONSTRUCTION—LIMITATION OF CLAIMS BY SPECIFICATION.

A claim of a patent calling in general terms for a "noncombustible and nonconducting material" cannot be limited by construction to a particular noncombustible nonconducting material named in the specification, either to avoid anticipation or infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

2. PATENTS (§ 328*)—INVENTION—FIREPROOF DROP CURTAIN.

The Channon patent, No. 769,788, for a fireproof drop curtain for theaters, consisting of a double curtain, one wall of sheet metal and the other of a noncombustible and nonconducting material, with an air space between, is void for lack of invention in view of the prior art, which disclosed a double drop curtain, with an air space between the walls, and also a double fireproof window shutter, one wall of which was of noncombustible nonconducting material.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

The bill in the Circuit Court was to restrain infringement of Letters Patent No. 769,788, issued September 13th, 1904, for a fireproof drop curtain used in theatres, and the decree appealed from is a decree sustaining the validity of the patent, and finding that the appellant was an infringer.

The invention is described by the patentee as follows:—

"My invention relates to a novel construction in a fireproof drop-curtain for theaters, the object being to provide a curtain of light and durable construction capable of withstanding high temperatures; and it consists in the features of construction and combinations of parts hereinafter fully described and claimed.

"In the accompanying drawings, illustrating my invention, Figure 1 is a fragmentary rear elevation of a curtain constructed in accordance with my invention, the rear wall being partly broken away. Fig. 2 is a fragmentary plan section of same on the line 2 2 of Fig. 1. Fig. 3 is a sectional view of the inner or stage wall of the curtain.

"My said invention consists, primarily, in providing a curtain the outer wall (or that which faces the auditorium) of which is composed of sheet metal, preferably corrugated sheet-steel, and the inner or stage wall of which is composed of a non-conducting non-combustible material, such as asbestos, such vitrified asbestos consisting of asbestos sheets which, so far as the writer is informed, are impregnated with a fireproof cement or other composition and baked, such cement or other substance acting as a binder for the fiber and rendering the sheets very hard and stiff, so that they become far more durable and better adapted for this purpose. The said inner wall is substantially hollow and is separated from the front wall by an air-space, the said curtain being thus relatively reinforced and the steel outer wall being thoroughly protected from the heat, so as to prevent warping during its operation and efficiently protecting the auditorium not only against the direct entrance of flames and smoke, but also against rapid heating to a degree dangerous to life.

"To these ends my said curtain consists of an outer wall A, of sheet metal, preferably corrugated, and an inner wall B, of a non-conducting non-combustible material, preferably vitrified asbestos, such inner and outer walls being secured together by means of bolts C and held apart by means of washers D inserted over said bolts C and interposed between said walls A and B, said washers being also composed of a non-conducting non-combustible material, the free space E between said walls A and B forming an insulating air-chamber. The said wall B is preferably hollow, being composed of two sheets F and G, between which a corrugated sheet of vitrified asbestos is interposed, such corrugated sheet being the equivalent of a plurality of longitudinally-disposed strips, thus providing a large number of vertical air-spaces H, which serve to render such rear walls still further impenetrable to heat.

"Owing to the large area of such curtains, it is essential that the same should be thoroughly reinforced and braced, and to this end I secure to the inner face of the metal wall or screen A a plurality of vertically-disposed parallel T-irons J and connect the same together by means of a plurality of inclined cross-braces K, such T-irons and cross-braces forming substantially a frame which carries the walls or screens A and B.

"The edges of the curtain are secured in channel-beams L, and to the outer faces of the webs of the channel-beams inclosing the vertical edges are secured U-shaped guides M, which receive the flanges of Z-bars N, secured to the stage side of the proscenium-wall O at each side of the opening, such interfitting guides serving to prevent flame and smoke from issuing into the auditorium."

Claims 1, 2, 3, and 5 (the only claims sued upon) are as follows:

"1. A fireproof drop-curtain comprising a wall of sheet metal and a wall of non-conducting, non-combustible material secured to said steel wall, there being an air-space between said walls.

"2. A hollow fireproof drop-curtain having one wall composed of sheet metal and its other wall composed of a layer of non-conducting, non-combustible material.

"3. A fireproof drop-curtain consisting of a wall of corrugated sheet metal, a wall of non-conducting, non-combustible material secured to said sheet-metal wall and separated therefrom by an air-space."

"5. A fireproof curtain comprising two screens of fireproof material, one of which is a non-conductor of heat, bolts securing said screens together, and means interposed between said screens at intervals for holding same apart to provide an air-space between the same."

It is admitted by appellee that unless claims 1 and 2 can be sustained, claim 3 cannot be sustained—the only distinction between that claim and claims 1 and 2 being that in the latter "corrugated sheet metal" is substituted for "sheet metal" as used in the preceding claims. It is also conceded by appellee that unless claims 1, 2 and 3 are sustained, claim 5 does not bring the appellant's device within the patent, for the means used in appellant's device to separate the walls, are different from the means described in claim 5. And it is conceded by appellant that if claims 1, 2 and 3 are sustained, appellant's device is an infringement.

The following patents were cited at argument:

No. 187,140, Feb. 6, 1877, J. W. Hoyt.
No. 223,401, June 6, 1880, W. D. Smith.
No. 228,548, June 8, 1880, H. McDonald.
No. 238,182, Feb. 22, 1881, W. Swindell.
No. 251,528, Dec. 27, 1881, G. L. Damon.
No. 298,281, May 6, 1884, C. F. Brigham.
No. 363,905, May 31, 1887, J. G. Merrill.
No. 551,704, Dec. 17, 1895, A. Younger.
No. 653,976, July 17, 1900, Verdel & Saino.
No. 675,955, June 11, 1901, W. R. Kinnear.
Specification forming part of Letters Patent No. 751,664, dated Feb. 9, 1904.
English Patent No. 2,601 of 1883, A. Clark.

Dwight B. Cheever and Howard M. Cox, for appellants.
Walter H. Chamberlin, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge (after stating the facts as above). Channon's principal claim of invention is that, for the first time in theatre fire proof curtains, he introduces a structure, one of the walls of which (that wall being the one next to the fire) is composed of non-conducting, non-combustible material described in the patent as "asbestos and the like." Laying aside for the time being, the fact that such wall was to be used in connection with a theatre curtain, we find in patent No. 223,401 issued to W. D. Smith, June 6th, 1880, a fire proof shutter or screen, one wall of which was of sheet metal, and the other of non-conducting, non-combustible material (in the Smith patent bricks made of any refractory material) the wall of the shutter exposed to the fire being the wall composed of such non-conducting, non-combustible material. The sole difference then between the Smith shutter and the Channon drop curtain consists, first, in the fact that one is a shutter for a window, and the other a drop curtain for the stage of a theatre; and secondly, that the non-combustible, and non-conducting material in the one is refractory bricks, and in the other "asbestos or the like"; or, to state it in another way, the three claims sued upon in the Channon patent, literally and unquestionably include the Smith shutter, unless the words "non-conducting, non-combustible material" in the Channon claims are by reference back to the de-

scription, to be read as excluding refractory bricks, and except, also, for the fact that they relate to different uses.

We cannot limit the language of the claims thus contended for. Carnegie Steel Co., Ltd., v. Cambria Iron Co., 185 U. S. 403, 22 Sup. Ct. 698, 46 L. Ed. 968, is no authority for such limitation. In that case the question was not whether the claim should be limited by decree of court to the specific things mentioned in the specification, but whether the claim had been "illegally expanded beyond the specification." No such question is presented in this case. The question presented to us is, whether under a claim including on its face "non-combustible, and non-conducting material" we may say, by judicial decree, that it does not mean this or that non-conducting, non-combustible material, but only such non-conducting, non-combustible material as is named in the specification. Were conditions reversed—the alleged infringing device having a non-combustible non-conducting material, but not asbestos, such for instance as mineral wool,—would this power of the court to limit by decree the claims of the patent to the particular material specified be admitted? And if not, at what specific non-conducting non-combustible material are we to draw the line? Appellee clearly has not meant to limit itself to asbestos. Where, then is the limit, short of anything non-conducting and non-combustible? Clearly, it seems to us, the concept of fireproofing, though not as a stage curtain, by a double wall, one wall of which (the one exposed to the fire) should be non-conducting and non-combustible, so as to prevent, among other things, the warping of the fire proof structure when exposed to the fire, is a concept set forth in the Smith patent, which to that extent, at least, anticipated the Channon patent.

Now does the fact that the Channon patent is for a use different from the Smith shutter, save the Channon patent from the Smith patent as an anticipation? Is there invention in the transference of the concept involved from use as a window shutter to use as a stage curtain? The new use of an old concept is often invention. But Channon did not introduce the old concept into what, when his patent was applied for, was a new use. As long ago as 1883, Alexander Clark took out an English patent "for an improved fire proof screen or shutter for separating the stage from the audience of theatres, together with means and apparatus for working the same" which described "a rigid structure made of iron or steel parts, riveted to suitable channel and angle iron framing, the curtain, screen or shutter being constructed double, a sufficient air space being left between the two skins to prevent the rapid transmission of heat." And on the 18th of January, 1904, twenty days before Channon's application for a patent was filed, the City Council of Chicago, following the great fire in the Iroquois Theatre in Chicago in the December preceding, in which several hundred persons perished, passed an ordinance requiring that all theaters be equipped with fire proof curtains of the following description:

"The main proscenium opening shall have a substantially vertically operated steel curtain, fire proofed on the stage side, which shall be raised and lowered by mechanical power and which shall be in constant use as the regular curtain and act drop."

Indeed, it was to meet the requirements of this ordinance, as well as to safeguard the patrons of theatres, doubtless, that Channon took out the patent sued upon. In other words Channon got his concept out of the prior art and the city ordinances, that is to say, the thought of fireproofing theatre curtains; and also got the mechanical means employed out of the prior art, that is to say, the use of two walls, with an air chamber between them, the wall exposed to the fire being of non-conducting, non-combustible material—leaving no ground, of any kind, on which to sustain the patentability of his curtain.

The decree is reversed, with instructions to dismiss the bill for want of equity.

NOTE.—After the filing of the opinion in this case, the court denied a motion by appellee (complainant below) for leave to file a disclaimer in respect to the patent.